# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE  DIVISION

Babineaux                                          Civil Action No. 16-01110

versus                                             Judge Dee D. Drell

Diamond B. Industries, LLC          Magistrate Judge Carol B. Whitehurst

## REPORT AND RECOMMENDATION

Before the Court, on referral from the district judge, is a Motion For Summary Judgment On Behalf Of Diamond B Industries, LLC, Diamond Boats, Inc., and Diamond B Marine Services, Inc. ("Defendants"), [Rec. Doc. 18], Plaintiff, Anthony Babineaux's, Opposition Memorandum [Rec. Doc. 20], and Defendants' Reply thereto [Rec. Doc. 24]. For the reasons that follow, the undersigned recommends that the Motion  be granted.

## I.  Background

Plaintiff, Anthony Babineaux, was a contract welder supplied by HolleMire International, LLC ("HolleMire") to Diamond B Industries, LLC (hereinafter "Diamond B Industries") to assist in the construction of a towing vessel, the *Diamond Lugger*. *R.1; R. 20-1, ¶¶ 1, 2*. Plaintiffs alleges he was injured on August 8, 2013 when he fell while he was working on the *Diamond Lugger*. *R. 1, R. 20-1, 4*. Plaintiff

filed this action asserting that "the suit involves admiralty and maritime jurisdiction" and therefore the Court has subject matter jurisdiction under 28 U.S.C. § 1333.[1] *R. 1; R. 20-1, ¶ 5.*

Defendants filed this Motion contending that at that time of plaintiff's alleged injury, the *Diamond Lugger* was still under construction at the Diamond B Industries' shipyard at the Port of Iberia and was not yet operational. Thus, because the alleged accident involves a shipyard worker allegedly injured while working in the shipyard on a vessel under construction, admiralty or maritime jurisdiction is not invoked as a matter of law. They assert that Plaintiff's lawsuit against Defendant should be summarily dismissed as a matter of law since there is no other basis for federal jurisdiction.

## II. Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Stahl v. Novartis Pharms. Corp.*, 283 F.3d

---

[1] In his Complaint, Plaintiff alleges that all of the parties are Louisiana citizens, and therefore does not allege diversity jurisdiction. *R. 1, ¶¶ 1-2.*

254, 263 (5th Cir.2002). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact but need not negate the elements of the nonmovant's case. *Exxon Corp. v. Oxxford Clothes XX, Inc.*, 109 F.3d 1070, 1074 (5th Cir.1997). When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir.2004).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir.1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. Id. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir.1993).

*III. Analysis*

Plaintiff alleges this Court has Admiralty Jurisdiction under 28 U.S.C. § 1331, which provides this Court with federal question subject matter jurisdiction. Plaintiff asserts a claim under § 905(b) of the Longshore Harbor Workers Compensation Act ("LHWCA"). Section 905(b) of the LHWCA states that "[i]n the event of injury to a person covered under [the LHWCA] caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party." 33 U.S.C. § 905(b). Thus § 905(b) expressly creates a cause of action for longshoremen who allege to have been injured by a vessel. The provision does not, however, act as an independent basis for admiralty and maritime jurisdiction over a longshoreman's claims. *See Margin v. Sea-Land Services, Inc.*, 812 F.2d 973, 975 (5th Cir. 1987)(emphasizing that failure to state a claim under § 905(b) must be distinguished from lack of jurisdiction); *May v. Transworld Drilling Co.*, 786 F.2d 1261, 1263 (5th Cir.1986) (explaining that whether a district court has jurisdiction to consider a shipyard worker's claims and whether the worker has alleged a cause of action under § 905(b) are separate and distinct inquiries); *Parker v. South Louisiana Contractors, Inc.*, 537 F.2d 113, 118 (5th Cir.1976) (highlighting that the passage of § 905(b) "neither expanded nor constricted" the boundaries of maritime jurisdiction; and likewise failed to create a

4

new federal cause of action cognizable under federal-question jurisdiction). Therefore, although § 905(b) may provide Plaintiff with a valid cause of action, he cannot employ § 905(b) as a vehicle for invoking the Court's admiralty and maritime jurisdiction. Thus, the Court must determine whether maritime jurisdiction exists in this case.

The Fifth Circuit utilizes a two part test for determining whether maritime jurisdiction exists in Federal Court. *Molett v. Penrod Drilling Co.,* 872 F.2d 1221, 1224 (5th Cir. 1989). "That inquiry is essentially fact-bound, turning on a determination of the location of the tort, the situs factor, and the pertinent activity, the nexus factor." *Id.* (quoting *Richendollar v. Diamond M. Drilling Co.,* 819 F.2d 124, 127 (5th Cir. 1987) (en banc)). If the alleged injury occurs on navigable waters, the situs factor is satisfied. *Richendollar,* 819 F.2d at 127. In order to fulfill the nexus factor, the "wrong [must] bear a significant relationship to traditional maritime activity." *Executive Jet v. City of Cleveland*, 409 U.S. 249, 268(1972).

The Fifth Circuit, as well as other Federal Courts, has consistently held that the construction of a ship is ***not*** a traditional maritime activity. *Cain v. Transocean Offshore USA, Inc.*, 518 F3d 295, 298 (5th Cir. 2008); *William Paul Crace v. Huntington Ingalls, Inc.*, 2016 WL 6110040, at *1 (5th Cir. 2016) ("There is no significant nexus to maritime activity if a ship is under construction, because

shipbuilding is not a traditional maritime activity."); ( *Casas v. U.S. Joiner LLC*, 372 Fed. App'x. 440, 441 (5th Cir. 2010). Historically, neither the construction of a ship nor the supplying of materials for ship construction has been characterized as a maritime activity, even when the construction occurs while the hull lies in navigable waters. *See Duplantis v. Northrop Grumman*, No. 10-1575, 2012 WL 2369348, at *2 (W.D. La. 2012); *Lowe v. Ingalls Shipbuilding, A Division of Litton Systems, Inc*, 723 F.2d 1173, 1185 (5th Cir. 1984) (citing *Thames Towboat Company v. The Schooner Francis McDonald*, 254 U.S. 242, 41 (1920)). Because the construction of a ship is not a traditional maritime activity, the "nexus" factor is not met in such cases, so there is no maritime jurisdiction over injuries or torts which occur to shipyard workers that occur while a ship in being constructed. *See Casas,* 372 Fed. Appx. at 441; *Crace v. Huntington Ingalls, Inc.*, 2016 WL 6110040, at *1 (5th Cir. 2016). Defendants do not dispute maritime situs, but contend that Plaintiff's claim has no maritime nexus because it arose in the context of shipbuilding, which is not a maritime activity.

In determining at which point a vessel under construction achieves vessel status, the Fifth Circuit has provided that "a structure under construction remains a non-vessel until it is complete and ready for duty upon the sea." *Cain*, 518 F3d at 301. In *Cain*, the plaintiff was a toolpusher who was injured while working on a semi-submersible drilling rig still being constructed but which was in navigable waters. *Id.*

at 297. The intended use of the watercraft was to drill in the Gulf of Mexico. *Id.* Although the watercraft was capable of self-propulsion and could transport goods and personnel around the Gulf, the watercraft was not yet fit for its intended use of drilling. *Id.* The court held that the watercraft was not a vessel for admiralty jurisdiction purposes, but was instead a vessel to- be, or a ship under construction. *Id.* at 303.

In order to determine whether the watercraft had become a vessel at the time the plaintiff was injured, the *Cain* court considered the facts that the watercraft lacked vital equipment for its operations and no drilling contractor would have found the craft acceptable for duty as a drilling vessel in the Gulf of Mexico. *Id.* at 303. The court also highlighted the fact that additional documentation was be required to issue prior to the watercraft being used for operations in the Gulf, and such documents had not yet been issued for the vessel's operation. *Id.* at 302-303. Since the injury occurred on a vessel which, at the time of the injury was not yet fit for its intended use, there was no admiralty jurisdiction because the alleged tort would have occurred during vessel construction phase, which failed to meet the maritime nexus requirement.

Here, Defendants argue that because the *Diamond Lugger* was still under construction at the time of Plaintiff's accident, it was not a vessel for maritime

jurisdictional purposes. They cite the affidavit of Robert J. Bonin, Jr., the Managing Member of Diamond B Industries and president of Diamond Boats in support of their position. Plaintiff contests that the *Diamond Lugger* was incomplete at the time of Plaintiff's alleged injury and contends that the "level of completeness and the fact that shortly thereafter the *Diamond Lugger* was commissioned" give rise to genuine issues of material fact. *R. 20, p. 3.* Plaintiff does not dispute Defendants' Statement of Uncontested Material Facts, *R. 20-1*, and provides no support for this contention.

The undisputed evidence shows that in order to operate as a towing vessel, a vessel must be capable of pushing, pulling and steering heavy loads. *R. 18-1, No. 22; R. 18-2, ¶10, Exh. A, Affidavit of Bonin.* Also, a towing vessel must have been issued a Communications Act Safety Radiotelephony Certificate, a Compass Deviation Card, and a Federal Communication Radio Station Authorization License and must have a fully wired, installed, and functioning electrical system. *R. 18-1, Nos. 14, 16, 18, 20; R. 18-2*, ¶¶ 7, 8, 9, 10. As of August 8, 2013, the date of the alleged accident, the *Diamond Lugger* was not capable of pushing, pulling and steering heavy loads. *R. 18-1, No. 23; R. 18-2*, ¶ 10. Also, as of August 8, 2013, none of the Communications Act Safety Radiotelephony nor a Federal Communication Radio Station Authorization License had been issued for the *Diamond Lugger*. *R. 18-1, Nos. 17, 19, 21; R. 18-2, ¶¶ 7, 8*. Furthermore, as of August 8, 2013, the electrical system was not fully wired,

installed, and functioning. *R. 18-1, No. 1; R. 18-2, ¶ 10*.

Thus, the *Diamond Lugger* was not fit for use as a towing vessel on the date of the Plaintiff's alleged injury. The undisputed evidence establishes that it was not until October 2013, that the Radiotelephony Certificate, Compass Deviation Card, and Radio Station Authorization License were issued for the *Diamond Lugger. R. 18-1, Nos. 17, 19, 21; R. 18-2, Exhs. A, B and C*. Furthermore, more than 2000 work hours were required after August 8, 2013, in order to complete the construction of the vessel. *R. 18-1, No. 13; R. 18-2, ¶ 12*. As of August 8, 2013, the construction of the vessel was only 80 to 85% complete. *R. 18-1, No. 12; R. 18-2, ¶ 12*. As stated by Bonin, "[a]s of August 8, 2013, no reasonable, prudent person would opine that the *Diamond Lugger* was fit for use as a towing vessel." *See R. 18-1, No. 24; R. 18-2, ¶ 11*.

Based on the undisputed facts as stated in the foregoing, he Court finds that the *Diamond Lugger* was under construction, incomplete, and not fit for its intended purpose at the time of the alleged accident causing Plaintiff's injuries. *See Miles ex rel. Miles v. VT Halter Marine, Inc*., 792 F.Supp2d 919, 924 (E.D. La. 2010). The structure was therefore not a vessel for purposes of admiralty jurisdiction, and Plaintiff's claims arising under admiralty law, general maritime law, and § 905(b) of

the LHWCA must be dismissed.[2]

### IV. Conclusion

Based on the foregoing, the undersigned recommends that the Motion For Summary Judgment On Behalf Of Diamond B Industries, LLC, Diamond Boats, Inc., and Diamond B Marine Services, Inc. [Rec. Doc. 18] be GRANTED and Anthony Babineaux's claim be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual

---

[2] Because "the unfinished [*Diamond Lugger*] was not a vessel for purposes of admiralty jurisdiction, it similarly cannot be a vessel for purposes of the § 905(b) vessel negligence claim." *Rosetti v. Avondale Shipyards, Inc.*, 821 F.2d 1083, 1085 (5th Cir. 1987) (citing *Richendollar*, 784 F.2d at 589 ("[t]he sine qua non of § 905(b) statutory liability for vessel negligence is the presence of a vessel which admiralty regards as a separate entity distinct from its owner. There simply was no such 'separate entity' yet." ))

findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

   **THUS DONE AND SIGNED** this 20th  day of January, 2017.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

11